Argued and submitted March 7, affirmed April 13, reconsideration denied May 13, petition for review denied July 7, 1983 (295 Or 161)

In the Matter of the Compensation of the
Beneficiaries of Donald W. Griffin, Deceased.

GRIFFIN,
*Petitioner,*

*v.*

TIME, DC, INC. et al,
*Respondents.*

(81-02495; CA A25877)

661 P2d 579

Robert L. Engle, Woodburn, argued the cause for petitioner. With him on the brief was Eichsteadt, Bolland, Engle, Schmidtman & Rohrer, Woodburn.

Allan M. Muir, Portland, argued the cause for respondent. With him on the brief were Schwabe, Williamson, Wyatt, Moore & Roberts, and Ridgway K. Foley, Jr., P.C., Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

Rossman, J., dissenting.

## BUTTLER, P. J.

Claimant appeals from a Workers' Compensation Board order denying her widow's benefits under ORS 656.204.[1] We affirm.

Claimant's husband, now deceased, had a history of coronary heart disease. In 1971, he had aneurysm surgery. While at work in January, 1975, he inhaled diesel fumes, which caused an acute coronary insufficiency. He suffered a myocardial infarction the next day. He was then determined to be permanently and totally disabled by Determination Order on March 11, 1976. In 1978, he had chest pains diagnosed as a possible thoracic aortic aneurysm. Dr. Olson, his treating physician at that time, did not believe that his symptoms were related to the aneurysm and did not recommend any surgical intervention. He stated that that surgery "is very high risk and would be of particular risk to a patient who has sustained an arterial lateral myocardial infarction" and who smokes 45 packs of cigarettes per year.

By 1980, deceased's coronary heart disease had worsened to the degree that he could not exert himself at all. He was hospitalized again that fall and released. In January, 1981, he was hospitalized with a diagnosis of coronary artery disease. It was determined that a large thoracic aortic aneurysm was displacing his esophagus. Surgery (a gastrostomy) was performed to relieve the esophagus obstruction caused by the thoracic aortic aneurysm. On February 10, 1981, he died. The death certificate listed the cause of death as respiratory arrest due to encroachment on the trachia by a thoracic aneurysm.

---

[1] ORS 656.204 (*amended by* Or Laws 1981, ch 874, § 15), provided, in pertinent part:

"If death results from the accidental injury, payments shall be made as follows:

"(1) The cost of burial shall be paid, not to exceed $1,000 in any case.

"(2) If the worker is survived by a spouse, monthly benefits shall be paid * * * to the surviving spouse until remarriage."

Claimant has abandoned her claim below that she is eligible for benefits under ORS 656.208; she concedes that she does not come within that statute, because she did not marry deceased until more than two years after his work-related injury.

Claimant contends that she is entitled to benefits under ORS 656.204:

> "If death results from the accidental injury, payments shall be made as follows:
>
> "* * * * *."

She contends that the work injury in 1975 worsened deceased's heart disease to such an extent that surgery to repair the aneurysm was impossible, contributing to his ultimate death in 1981. Accordingly, she argues, death resulted from the accidental injury.

The burden is on claimant to demonstrate that death resulted from the 1975 work injury. *Youngren v. SAIF,* 6 Or App 297, 299, 487 P2d 107, *rev den* (1971). The referee found that she had not met her burden and denied her claim; the Board affirmed.

The reports of three doctors are pertinent. Dr. O'Dell, speaking of the decedent in 1980, said that

> "* * * he will never be a candidate for surgery because of the extremely poor left ventrical function due to his recurrent myocardial infarctions."

It was he who filled out the death certificate stating that the aneurysm was the cause of death. Dr. Olson, at claimant's request, wrote a letter shortly prior to the hearing stating his opinion that the thoracic aneurysm was first found in 1978

> "* * * and he [decedent] was felt not to be an operative candidate for the thoracic aneurysm, because of his cardiovascular status. The fact that he was not an operative candidate for the vascular surgery because of his cardiac disease allowed the aneurysm to progress and eventually was directly responsible for his death."

That report, however, is not consistent with his earlier report[2] of September, 1978, when he wrote that

> "* * * I would not recommend any surgical intervention at this time. This surgery is very high risk and would be of particular risk to a patient who has sustained an anteral lateral myocardial infarction and has a 45 pack per year smoking history."

---

[2] The dissent ignores Dr. Olson's earlier opinion. The inconsistency between the two reports is part of the conflicting medical evidence.

In February, 1981, Dr. Olson wrote that Mr. Griffin entered the hospital with problems clearly related to the aneurysm and that he could not associate those problems with the myocardial infarction that had occurred in 1975.

Dr. Rogers, who had treated the deceased after the 1975 work-related incident, stated in two separate reports after decedent's death that he felt death was due to the advanced nature of the deceased's coronary heart disease with chronic failure.[3] However, it was his opinion that if deceased had died of a rupture of the thoracic aneurysm as the death certificate stated,

"* * * then I would not attribute death in any way to his coronary disease because the resection of aortic arch aneurysms is largely experimental and very high risk and would not be attempted probably in a man of 65 with chronic obstructive pulmonary disease, even if his heart were of average health."

He concluded that death was

"* * * due to the very advanced nature of his coronary heart disease with chronic failure or low output state, perhaps aggravated by the debilitating effects of the tube gastrostomy done 2/5/81, with his death coming 2/10/81."

Claimant, however, does not rely on that conclusion of Dr. Rogers; she concedes that decedent's death was caused by the aortic aneurysm.

There was no autopsy performed, and we are not convinced by the medical evidence that the death "resulted from" deceased's 1975 injury at work, because the preponderance of that evidence is that death resulted from the aortic aneurysm, which did not "result from" the 1975 injury or from the coronary condition that rendered the decedent totally disabled in 1976. The medical evidence also convinces us that the surgical procedure to accomplish the resection of the aortic arch aneurysm is very high risk surgery that would not have been performed on the decedent in 1978, regardless of the 1975 compensable injury.[4]

---

[3] Claimant does not contend that the decedent died as a result of his coronary heart disease, but concedes he died as a result of the aneurysm.

[4] We do not agree with the dissent that claimant would "probably" recover if the decedent had undergone the surgery to correct the aneurysm and had died during surgery (slip opinion at 3). Given the reports of both Drs. Olson and Rogers that it was a "very high risk" procedure, that statement is doubtful.

Affirmed.

**ROSSMAN, J.,** dissenting.

The wife of the deceased must demonstrate by a preponderance of the evidence that the death of her husband resulted from a 1975 work injury. The majority, citing what it interprets to be conflicting medical reports, finds she did not meet her burden of proof. However, in my opinion, claimant has convincingly demonstrated that all of the links in the chain of causation are present, proving that, *but for* her husband's 1975 work injury resulting in the myocardial infarction, he would have been able to have the life-saving corrective surgery on the aneurysm that eventually resulted in his death.

Claimant's case is largely based on the findings made by her husband's doctor, Dr. Olson. His letter, written soon after her husband died, outlines the causal connection this way: "The fact that he was not an operative candidate for the vascular surgery because of his cardiac disease allowed the aneurysm to progress and eventually was *directly* responsible for his death." The majority speaks of "conflicting medical evidence." A close look at Dr. Rogers' reports, on which the majority relies, however, reveals that he felt death was due to the "advanced nature of [the deceased's] coronary heart disease with chronic failure or low output state, perhaps aggravated by the debilitating effects of the tube gastrostomy * * *." I would ask, how did the coronary heart disease become so advanced? In 1975, Dr. Rogers reported that the deceased had no past history of any cardiovascular disease. The 1975 incident was, in his opinion, "a clearcut instance of work-aggravated coronary heart disease that led repeatedly to angina pectoris and finally on January 8th, to a substantial anterior myocardial infarction." It is undisputed that the 1975 work injury causing the deceased's myocardial infarction caused him to be totally and permanently disabled. The medical evidence reveals that after 1975 he could not exert himself at all, nor was it possible for him to withstand surgical repair to restore proper left ventrical function. Gradually his condition deteriorated so much that, when the aneurysm was discovered, surgical treatment could not be considered an option. Dr. O'Dell in 1980 stated that,

because of the extremely poor left ventrical function, due to his recurrent myocardial infarctions, he would *never* be a candidate for surgery.

The evidence presented by all or any one of these doctors shows that a causal connection clearly exists between the work-caused heart disease and claimant's husband's death. The myocardial infarction caused his heart disease to become so severe that he was permanently and totally disabled. This, in turn, caused him to be an unfit candidate for corrective surgery for a later discovered aneurysm, which Dr. Olson stated caused his death only because aortic surgery, was not done. Thus, he was forced to take his chances without surgery and three years later he was dead. It is ironic that claimant would probably recover if her husband had undergone the surgery to correct the aneurysm and had died during it but cannot recover here, even though he died as a result of an aneurysm that could not be corrected because of his weakened condition. The majority's approach presents those in husband's predicament with a second Hobson's choice:[1] have the aneurysm surgery, die as a result and, perhaps, thereby insure recovery for the survivor *or* forego the surgery and die as a result a few years later, guaranteeing that there will be no recovery.

I do not see the conflict in the medical evidence that so troubles the majority. The evidence is consistent on the crucial issue of causation. No matter how you cut it, the trail leads back to the 1975 on-the-job injury. Whether claimant's husband in fact died from the heart disease itself (as Dr. Rogers concluded) or from the aneurysm that was inoperable because of the disease (as Dr. Olson concluded), his death was a direct result of the 1975 injury. There should be a recovery in either case. I believe that claimant has clearly demonstrated by a preponderance of the evidence that her husband's death was the result of his 1975 myocardial infarction due to a work injury, and therefore should recover under ORS 656.204. I would reverse.

---

[1] Thomas Hobson was an English liveryman, who required every customer to take the horse nearest the door.